IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| OLIVIA RAYE MCCORMICK, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CIVIL ACTION NO.:  14-0399-C |
| | * | |
| CAROLYN W. COLVIN, | * | |
| Acting Commissioner of Social | * | |
| Security, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. § 405 (g) and 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for Social Security disability and supplemental security income benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 23 & 24 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, and the Commissioner's brief, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 23 & 24 ("An appeal from a

1

Plaintiff alleges disability due to epilepsy, migraine headaches, anxiety, seizures, and pseudo seizures. The Administrative Law Judge (the "ALJ") made the following relevant findings:

> 1. **The claimant meets the insured status requirements of the Social Security Act through March 1, 2009.**
>
> 2. **The claimant has not engaged in substantial gainful activity since January 30, 2008, the application date.**
>
> 3. **The claimant has the following severe impairments: seizures, pseudo seizures, migraines, and anxiety.**
>
> The Administrative Law Judge finds that the claimant has impairments that are "severe" within the meaning of the regulations and those impairments significantly limit the claimant's ability to perform basic work activities.
>
> 4. **The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, (20 CFR 416.920(d), 416.925, and 416.926).**
>
> The claimant's impairments have been considered individually and in combination, and the impairments do not meet or equal any of the listings. The claimant has not been presented any medical findings, arising from the application of medically acceptable clinical or laboratory diagnostic techniques that prove that the claimant met or equaled a listing for the duration period. There are no acceptable medical sources that treated [her], examined [her] or who examined [her] records, who have opined that [her] condition meets or medically equals a listing.
>
> The severity of the claimant's mental impairment does not meet or medically equal the criteria of listing 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three

---

judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has mild restriction. The claimant reported she does the laundry, cooks, washes dishes and dusts. She stated she cares for her dog and watches her friend's children when she feels like it. She reported she cares for her personal needs. She drives a car and goes out of the house every day.

In social functioning, the claimant has moderate difficulties. The claimant watches her friend's children when she feels like it. She shops in stores. She visits with friends and family.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant reported she can pay bills, count change and handle a checking and savings account. She stated she likes to make photo albums.

As for episodes of decompensation, the claimant has experienced no episodes decompensation which have been of extended duration. No problems have been reported or alleged in this area of functioning.

Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of "paragraph C" criteria.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments. Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations; she should avoid work at unprotected heights and with dangerous machinery. She can perform simple tasks. She can follow short,**

**simple instructions. She should have occasional contact with the general public.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s) – i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques – that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

In terms of the claimant's alleged seizures, the Administrative Law Judge assigns determinative weight to the opinion of John Yager, M.D., who examined the claimant on October 26, 2012. The Administrative Law Judge notes that Dr. Yager's examination was essentially normal. Neurological exam revealed the visual fields were full to confrontation. Extraocular muscles were intact. The face was symmetric. The tongue protruded in the midline.

The palate elevated symmetrically. Dr. Yager noted the claimant flinched away from the tuning fork when he tried to test her. DTRs were 2+ and equal. The claimant could do finger-to-nose quite well. Finger opposition was well-done. Grip strengths were equal and biceps, triceps ad deltoid strengths were equal. The Administrative Law Judge specifically notes that the claimant stated she did not take any medications because it causes her face to twitch and she did not like that.

The Administrative Law Judge finds it extremely significant that Dr. Yager found the claimant seemed to be embellishing her problems. He states she was not sure that she really has a full seizure disorder. He did note that if it was found that she did indeed have a seizure disorder, she should not work at unprotected heights, drive or operate machinery. He further felt the claimant's problems may be more psychiatric and she should be evaluated from that stand point.

Supporting the Administrative Law Judge's finding that the claimant can perform work activity is the report from Peter Bertucci, M.D., the State Agency physician. The Administrative Law Judge finds it extremely significant that Dr. Bertucci found the claimant had no physical limitations. He only found that she should avoid concentrated exposure to hazards.

The Administrative Law Judge recognizes that Dr. Villarreal completed a Medical Source Statement on July 10, 2012, which she found the claimant can occasionally lift/carry up to 10 pounds. She found the claimant can sit, stand and walk for 30 minutes at a time and for one hour during an 8-hour day. She found the claimant would need a job that permits shifting positions at will. She stated the claimant's condition frequently interferes with the attention and concentration required to perform simple work-related tasks. She further found the claimant is very nervous and unable to handle fine manipulation. The Administrative Law Judge notes that Dr. Villarreal completed a prior residual functional capacity on which she indicated the claimant is unable to lift any amount of weight. She found the claimant can sit for 60 minutes at a time and stand/walk for 5 minutes at a time. She indicated the claimant could sit for one hour during an 8-hour day and never stand/walk. She also completed a Seizure Questionnaire on which she found the claimant is very restricted. The Administrative Law Judge does not give any weight to those residual functional capacity forms because they not only conflict with Dr. Villarreal's own records but with the remainder of the evidence. The Administrative Law Judge specifically notes that there is no evidence that the claimant has received regular and ongoing treatment for her alleged complaints. In addition, no tests have been administered that have diagnosed the claimant with a seizure disorder. Dr. Villarreal also completed a Mental Capacity Assessment questionnaire on which she indicated the claimant has marked limitations in her ability to understand and remember; sustain concentration and persistence and in her ability to interact socially. The Administrative Law Judge does not give any weight to that opinion because i[t] totally conflicts with the remainder of the medical evidence. The claimant has exhibited the capacity to attend college and sustain work activity and there is no evidence to indicate that ability no longer exists. The Administrative Law Judge notes that Dr. Villarreal stated the claimant has poor emotional control and is at times irrational. Again, the Administrative Law Judge notes that no evidence has been submitted to indicate the claimant is as disabled as Dr. Villarreal stated. In fact, the majority of Dr. Villarreal's records indicate the claimant has only been treated for various complaints, including respiratory problems, nasal congestion, sore throat, etc.

The Administrative Law Judge finds that the records do not support marked to extreme limitations in all categories, and actually indicate an impairment with a Global Assessment of Functioning (GAF) of 60.  The <u>Diagnostic and Statistical Manual of Mental Disorders</u>, Fourth Edition (DSM-IV) describes GAF in the range of 51-60 as an indication of moderate symptoms or moderate difficulty in social, occupational, or school functioning.  Furthermore, [Dr.] Villarreal's opinion is not supported by her own treatment records.  There has been no evidence to support marked to extremes in all categories.

With regard to the alleged anxiety, the Administrative Law Judge considered the records from Southwest Alabama Behavioral Health Center.  The evidence reveals the claimant has been treated with counseling and medication.  The Administrative Law Judge specifically notes that the treatment notes indicate the claimant has been under stress because of her inability to pay her bills and grieving over the death of her father.  The Administrative Law Judge finds it extremely significant that Dr. Cranton, the treating psychiatrist, found her Global Assessment of Functioning (GAF) was 60, which indicates only moderate symptoms or moderate difficulty in social, occupational or school functioning.

In sum, the above residual functional capacity assessment is supported by the claimant's own statements.  The Administrative Law Judge notes that the claimant stated she [] cares [for] her friend's children when she feels like it.  She cares for her own dog, does the laundry and other household chores.  She watches TV.  She is able to care for her personal needs.  She stated she drives and shops in stores.  She is able to pay bills, count change and handle a checking and savings account.  She does homework given to her by the therapist and visits with friends.

**6.     Based on the vocational expert testimony, the claimant is unable to perform any past relevant work.**

The claimant has past relevant work as a loan clerk and cashier.  Accordingly, the claimant is unable to perform past relevant work.

**7.     The claimant was born on October 17, 1978, and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.**

**8.     The claimant has at least a high school education and is able to communicate in English.**

**9.     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).**

**10.    Based on vocational expert testimony and considering the claimant's age, education, work experience, and residual functional capacity, there are**

**jobs that exist in significant numbers in the national economy that the claimant can perform.**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile. When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexetional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations. If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making.

The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as food prep worker of which there are 775,140 jobs in the national economy and 9.760 in the state; dishwasher of which there are 509,550 jobs in the national economy and 36,030 in the state; and laundry worker of which there are 887,890 jobs in the national economy and 11,308 in the state.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

**11.    The claimant has not been under a disability, as defined in the Social Security Act, from January 30, 2008, through the date of this decision.**

(Doc. 15, Tr. 163-169) (internal citations omitted; emphasis in original). The Appeals Council affirmed the ALJ's decision, (*Id*., Tr. 5-8), and, thus, the hearing decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

A claimant is entitled to an award of Social Security disability and supplemental security income benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or last for a continuous period of not less than 12 months. *See* 20 C.F.R. § 416.905(a) (2014). In determining whether a claimant has met her burden of proving disability, the Commissioner follows a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920. At step one, if a claimant is performing substantial gainful activity, she is not disabled. 20 C.F.R. § 416.920(b). At the second step, if a claimant does not have an impairment or combination of impairments that significantly limits her physical or mental ability to perform basic work activities, she is not disabled. 20 C.F.R. § 416.920(c). At step three, if a claimant proves that her impairments meet or medical equal one of the listed impairments set forth in Appendix 1 to Subpart P of Part 404, the claimant will be considered disabled without consideration of age, education, and work experience. 20 C.F.R. § 416.920(d). At the fourth step, if the claimant is unable to prove the existence of a listed impairment, she must prove that her physical and/or mental impairments prevent her from performing her past relevant work. 20 C.F.R. § 416.920(f). And, at the fifth step, the Commissioner must consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. 20 C.F.R. § 416.920(g). Plaintiff bears the burden of proof through the first four steps of the sequential evaluation process, *see Bowen v. Yuckert,* 482 U.S. 137, 146 n.5, 107

S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987), and while the burden of proof shifts to the Commissioner at the fifth step of the process to establish other jobs existing in substantial numbers in the national economy that the claimant can perform,[2] the ultimate burden of proving disability never shifts from the plaintiff, *see, e.g., Green v. Social Security Administration,* 223 Fed.Appx. 915, 923 (11th Cir. May 2, 2007) ("If a claimant proves that she is unable to perform her past relevant work, in the fifth step, 'the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform.' . . . Should the Commissioner 'demonstrate that there are jobs the claimant can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled.'").[3]

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform those jobs identified by the vocational expert ("VE"), is supported by substantial evidence.  The ALJ found that she could perform a full range of work at all exertional levels but with the following nonexertional limitations: she should avoid work at unprotected heights and with dangerous machinery; she can perform simple tasks; she can follow short, simple instructions; she should have occasional contact with the general public.  Given this RFC, the VE determined that she could perform the work required of a food prep worker of which there are 775,140 jobs in the national economy and 9.760 in the state; a dishwasher of which there are 509,550 jobs in the national economy and 36,030 in the state; and a laundry worker of which there are 887,890 jobs in the national economy and 11,308

---

[2] *See, e.g., McManus v. Barnhart,* 2004 WL 3316303, *2 (M.D. Fla. Dec. 14, 2004) ("The burden [] temporarily shifts to the Commissioner to demonstrate that 'other work' which the claimant can perform currently exists in the national economy.").

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir.R. 36-2.

in the state. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision." *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue,* 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.* (quoting *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1158-59 (11th Cir. 2004).

The Court considers Plaintiff Olivia Raye McCormick ("Plaintiff" or "McCormick") to be offering three reasons why the Commissioner's decision to deny her Social Security disability and supplemental security income benefits is in error (*i.e.*, not supported by substantial evidence): (1) the ALJ accorded improper weight to the various doctors' evaluations/examinations contained in the record and/or erred in failing to obtain further consultative examinations in light of her rejection of the evaluations of Dr. Marie Villarreal ("Dr. Villarreal") and Dr. Roman Kesler ("Dr. Kesler"), as well as the recommendation of Dr. John Yager ("Dr. Yager") in his consultative examination; (2) the ALJ's determination and finding that claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she should avoid work at unprotected heights and with dangerous machinery; she can perform simple tasks; she can follow short,

---

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987).

10

simple instructions; and she should have occasional contact with the general public, is not supported by substantial evidence because of the ALJ's failure to consider relevant evidence and testimony of record, the ALJ's failure to properly document the basis for giving no credibility to the opinions and reports of McCormick's treating physicians, and the ALJ's failure to address the opinions and reports of McCormick's specialist treating physician; and (3) the Appeals Council's failure, after being notified that McCormick was diagnosed with advanced cancer two months after the ALJ's decision, to remand and require the ALJ to determine when the cancer first began affecting McCormick's ability to work.  In this instance, the undersigned need not consider plaintiff's first and third assignments of error inasmuch as it is clear that the ALJ's RFC determination is not supported by substantial evidence

      Initially, the Court notes that the responsibility for making the residual functional capacity determination rests with the ALJ.  *Compare* 20 C.F.R. § 416.946(c) ("If your case is at the administrative law judge hearing level . . . , the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.,* 542 Fed. Appx. 890, 891-92 (11th Cir. Oct 29, 2013) (per curiam) ("an RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments.  There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, *i.e,* where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole."  (internal citation omitted)).  A plaintiff's RFC – which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]" – "is a[n] [] assessment of

what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins v. Commissioner of Social Security,* 457 Fed. Appx. 868, 870 n.5 (11th Cir. Feb. 9, 2012) (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)). And, of course, it is clear that the ALJ's RFC determination is as important at the fourth step of the sequential evaluation process as it is at the fifth. *See Phillips v. Barnhart,* 357 F.3d 1232, 1238-39 (11th Cir. 2004).

> At the fourth step, the ALJ must assess: (1) the claimant's residual functional capacity []; and (2) the claimant's ability to return to [his] past relevant work. As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. Moreover, the ALJ will assess and make a finding about the claimant's residual functional capacity based on all the relevant medical and other evidence in the case. Furthermore, the RFC determination is used to both determine whether the claimant: (1) can return to [his] past relevant work under the fourth step; and (2) can adjust to other work under the fifth step . . . . If the claimant can return to [his] past relevant work, the ALJ moves on to step 5.

*Id.* (internal citations, quotation marks, and brackets omitted). In this case, the ALJ made the following RFC determination:

> **After careful consideration of the entire record, the undersigned finds that that claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she should avoid work at all unprotected heights and with dangerous machinery. She can perform simple tasks. She can follow short, simple instructions. She should have occasional contact with the general public.**

(Tr. 158-169 (emphasis in original).)

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "provide[d] a sufficient rationale to link" substantial record evidence "to the legal conclusions being reached." *Ricks v. Astrue,* 2012 WL 1020428, *9 (M.D. Fla. March

27, 2012) (quoting *Russ v. Barnhart,* 363 F.Supp.2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue,* 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd,* 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013); *see also Hanna v. Astrue,* 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review . . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[5]

In this case, the undersigned cannot find that the ALJ has provided the required "linkage" between the record evidence and her RFC determination necessary to facilitate this Court's meaningful review of her decision. The ALJ recognized that Dr. Villarreal completed a Medical Source Statement, a prior residual functional capacity, a Seizure Questionnaire, and a Mental Capacity Assessment Questionnaire, all of which were very restrictive in what McCormick could do, both physically and mentally. However, despite voluminous medical records from Dr.

---

[5] It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner – using "the record as a whole" – on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue,* 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record;" holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ; the court must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna,* 395 Fed. Appx. At 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ *could have* relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen,* 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

Villarreal from 2009 through 2011, all of which noted in whole or in part, that Dr. Villarreal diagnosed McCormick with epilepsy, migraine headaches, anxiety, seizures, pseudo seizures, pain disorder, PTSD, personality disorder, and back pain, the ALJ made the conclusory findings that the above-referenced forms were not supported by Dr. Villarreal's records. Thus, the ALJ gave Dr. Villarreal's completed questionnaires and statements no credibility. It is clear that the ALJ failed to provide an adequate basis as to why Dr. Villarreal's records did not support her medical and mental restrictions. Moreover, Dr. Villarreal's records do, in fact, address all of the medical bases for her restrictions. The ALJ's RFC assessment fails to state specific evidence in Dr. Villarreal's records bearing upon McCormick's ability to perform the physical, mental, sensory and other requirements of work. In short, the ALJ's decision does not state with sufficient clarity the basis for giving Dr. Villarreal's opinions and statements no credibility.

Additionally, Dr. Kesler, a neurosurgeon to whom Dr. Villarreal referred McCormick for treatment of her seizures, completed a seizure questionnaire and other forms that were very restrictive as to what claimant could do as a result of her seizures. Dr. Kesler also diagnosed McCormick with seizures and pseudo seizures. The ALJ, however, failed to address Dr. Kesler's records and opinions, despite the fact that Dr. Kesler was a treating specialist. The failure to address Dr. Kesler's questionnaire and treatment is a fatal error. *See Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 590-91 (11th Cir. 2006) ("[T]he ALJ 'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'" (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986))); *id.* ("[W]e cannot say that the failure to address [the treating physician's] opinion was harmless without re-weighing the evidence and engaging in conjecture that invades the province of the ALJ."); *Green v. Colvin*, No. CA 13-0368-WS-C, 2014 WL 936415 (S.D. Ala. Mar. 11, 2014)

(finding reversible error where the ALJ failed to address the opinion of the Plaintiff's treating physician). The evidence supports a finding that Dr. Kesler be deemed a treating physician because he had an ongoing relationship with the Plaintiff whereby he saw her several times to treat her for her seizure disorder, (Tr. 615-19, 841-42). *See Nyberg*, 179 F. App'x at 591 ("[A] treating physician is one who not only provides (or has provided) the claimant with medical treatment or evaluation, but also has (or has had) an 'ongoing treatment relationship' with the claimant." (citing 20 C.F.R. § 404.1502)). Even if the ALJ did not consider Dr. Kesler a treating physician, which the Court has no way of knowing because the ALJ did not address his care, the ALJ still needed to explain the weight given Dr. Kesler's opinions. *See McCloud v. Barnhart*, 166 F. App'x 410, 419 (11th Cir. 2006) (remanding where the ALJ failed to explain the weight given to the report of a consulting psychologist or the reasons for discrediting his opinion); *Sharfarz v. Bowen*, 825 F.2d 278, 279-80 (11th Cir. 1987) ("[T]he ALJ was required to state with particularity the weight he gave the different medical opinions and the reasons therefor." (citation omitted)). Consequently, the ALJ's decision lacks the clarity required for the Court to perform a meaningful review.

This Court cannot find substantial evidence in the record supporting the ALJ's contention that Dr. Villarreal's records do not support the restrictions she placed on McCormick in her Residual Functional Capacity, Seizure Questionnaire, Medical Source Statement and Mental Capacity Questionnaire. Moreover, the ALJ failed to mention, much less consider, the records and restrictions of activity placed on McCormick by Dr. Kesler, her treating specialist to whom McCormick had been referred by Dr. Villarreal. The ALJ's decision lacks sufficient reasoning to establish that the proper legal analysis has been conducted. Since the ALJ omitted the evidence of record from Dr. Kesler and failed to provide linkage between her claims of no

supporting records and Dr. Villarreal's restrictions of activity, this case is due to be remanded for further proceedings not inconsistent with this decision.[6]

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan,* 501 U.S, 89, 111, S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision.  The remand pursuant to sentence four of § 405(g) makes plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer,* 509 U.S. 292, 113 S.ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 6th day of August, 2015.

        s/WILLIAM E. CASSADY
        **UNITED STATES MAGISTRATE JUDGE**

---

[6] The undersigned recognizes that the ALJ gave great weight to the consultative examination of Dr. Yager, but notes that Dr. Yager's examination was inconclusive, opining that McCormick "might" be embellishing her problems and "might" have psychiatric issues as opposed to actual seizures.  Further, he recommended further testing to determine the existence of seizures, which the ALJ neglected to do, as has been raised by McCormick.